IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY AUTRY<br>49993-510<br>FDC Philadelphia<br>P.O. Box 562<br>Philadelphia, PA 19105<br><br>　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CITY OF PHILADELPHIA<br>1515 Arch Street, 14th Floor<br>Philadelphia, PA 19102<br><br>　　　　　&<br><br>PRISON COMMISSIONER BLANCHE CARNEY, in her individual and official capacity,<br>Philadelphia Industrial Correctional Center<br>8301 State Road<br>Philadelphia, PA 19136;<br><br>　　　　　&<br><br>WARDEN PIERRE LACOMBE, in his official capacity,<br>Philadelphia Industrial Correctional Center<br>8301 State Road<br>Philadelphia, PA 19136;<br><br>　　　　　&<br><br>DEPUTY WARDEN WILLIAM VETTER, in official capacity,<br>Philadelphia Industrial Correctional Center<br>8301 State Road<br>Philadelphia, PA 19136;<br><br>　　　　　&<br><br>CORRECTIONAL OFFICER ROMANDO NICHOLLS, in his individual and official | CIVIL ACTION<br><br>No.:<br><br>TRIAL BY JURY DEMANDED |

|  |  |
|---|---|
| capacity, | : |
| Philadelphia Industrial Correctional Center | : |
| 8301 State Road | : |
| Philadelphia, PA 19136; | :                                :  |
|  | : |
| & | : |
|  | : |
| JOHN DOE CORRECTIONAL OFFICERS | : |
| #1-10, | : |
| Philadelphia Industrial Correctional Center | : |
| 8301 State Road | : |
| Philadelphia, PA 19136; | : |
|  | : |
| Defendants. | : |

### CIVIL ACTION COMPLAINT

Plaintiff, by and through his attorney Lauren A. Wimmer, Esq., hereby alleges the following:

### PARTIES

1. Plaintiff Anthony Autry is an adult individual who was an inmate in the Philadelphia Prison System in Philadelphia, Pennsylvania.

2. At all times material to this action, Defendant, City of Philadelphia, a City of the First Class organized and existing under the laws of the Commonwealth of Pennsylvania, was responsible for the creation and operation of the Philadelphia Department of Prisons including, but not limited to, the Philadelphia Industrial Correctional Center ("PICC").

3. PICC is located at 8301 State Road, Philadelphia, Pennsylvania.

4. Defendant, Prison Commissioner Blanche Carney was at all times relevant hereto the Commissioner for the Philadelphia Department of Prisons of the City of Philadelphia, responsible for final policymaking and overseeing admissions, diagnostics, inmate placement, classification, security policies, and safety for prisons including PICC.

5.      Defendant, Warden Pierre Lacombe was at all times relevant hereto the Warden for PICC, responsible for operations, admissions, diagnostics, inmate placement, classification, security policies, and safety, acting under the color of state law and in his authority as the Warden for PICC, a prison in the Philadelphia Department of Prisons of the City of Philadelphia.

6.      Defendant, Deputy Warden William Vetter was at all times relevant hereto the Deputy Warden for PICC, responsible for admissions, diagnostics, inmate placement, classification, security policies, and safety, acting under the color of state law and in his authority as the Deputy Warden for PICC, a prison in the Philadelphia Department of Prisons of the City of Philadelphia.

7.      Defendant Correctional Officer Romando Nicholls is an adult individual who, on information and belief, is a resident of the Commonwealth of Pennsylvania and is being sued in both his official and individual capacity. CO Nicholls was responsible for ensuring the safety and security of inmates, and of the premises of PICC, including, *inter alia*, operations, classification, housing, security policies, and premises security and safety.

8.      Defendant John Does #1-10, a fictitious designation, were warden(s), sergeant(s), or correctional officers, adult individual(s) who, on information and belief, are residents of the Commonwealth of Pennsylvania and being sued in both his/her official and individual capacity. It is believed these John Does were responsible for ensuring the safety and security of inmates, and of the premises of PICC, including, *inter alia*, operations, classification, housing, security policies, and premises security and safety.

## JURISDICTION AND VENUE

9.      This action is brought pursuant to 42 U.S.C. § 1983.

10.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(b)(2) as the defendants

are residents of this district and all the events giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

12. At all times relevant to this action, Plaintiff was an inmate at PICC, a prison in the Philadelphia Prison System.

13. On or about Thursday, August 11, 2022, Plaintiff was assigned to Cell #24 on block H1.

14. Plaintiff was a pretrial detainee.

15. Plaintiff was also confined in the Philadelphia Prison System pursuant to a Pennsylvania Department of Corrections state parole detainer.

16. Kevin Wingfield ("Wingfield") and Nibri Watson ("Watson") were both inmates in the Philadelphia Prison System on or about August 11, 2022.

17. On the same date, Wingfield and Watson were housed together in PICC Cell #26 on block H1.

18. On the same date, Defendant Corrections Officer Romando Nicholls was assigned to monitor block H1 for the 3pm to 11pm shift.

19. At all times relevant to this action Defendants Nicholls, Carney, Lacombe, Vetter, and John Doe Correctional Officers #1-10 were employed by Defendant City of Philadelphia.

20. On the same date, at approximately 20:33, Plaintiff was attacked by inmates Winfield and Watson.

21. Plaintiff was stabbed with an unknown object.

22. Plaintiff was transported to the medical unit at PICC.

23. Due to the extent of his injuries, Plaintiff was then transported to Jefferson-Torresdale hospital. Plaintiff suffered multiple injuries.

24.     Plaintiff suffered a deep laceration approximately 6 inches in length to his left eye. Plaintiff required sutures to close the laceration.

25.     Plaintiff suffered two deep puncture wounds approximately 2 inches in depth to his back. Plaintiff required stitches to close the puncture wounds.

26.     Plaintiff was severely injured by the incident.

27.     Following the attack on Plaintiff, a search was conducted of the trash can on the top tier of block H1 and one homemade weapon approximately seven inches long was recovered.

28.     Following the attack on Plaintiff, a search was conducted of Wingfield and Watson's Cell #26 and one homemade weapon approximately four inches long was recovered from the toilet bowl.

29.     Prior to the attack on Plaintiff, Inmates Wingfield and/or Watson engaged in conduct that required them to be kept separate and segregated from other inmates like Plaintiff, yet no action was taken.

30.     The City of Philadelphia has a history of understaffing and failing to protect inmates like Plaintiff from known, dangerous inmates, failing to monitor inmates for inmate safety, and failing to ensure that security protocols are being followed to ensure inmate safety.

   a.   In July of 2018, in *Simmons v. Philadelphia*, 22-cv-1644, Simmons was assigned to a cell with a paranoid schizophrenic, Jessie Wilson, who had a history of physical and verbal abuse of Simmons. Simmons reported the abuse, but of course, the claim fell upon deaf ears. Simmons remained in a cell with Wilson, who brutally assaulted and raped Simmons throughout the night after his complaints.

   b.   In January of 2021, inmate Dale Curbeam was found dead face down in his cell at the CFCF. His cellmate was arrested for the murder. According to the Philadelphia

      Inquirer, only one correctional officer was stationed in the Pod at the time of the homicide. https://www.inquirer.com/news/homicide-philadelphia-jails-violence-covid-pandemic- lockdowns-20210120.html.

  c.  In April of 2022, Christopher Hinkle was incarcerated at Curran Fromhold Correctional Facility ("CFCF"), a prison operated by the City of Philadelphia, when another inmate attacked him, resulting in a broken neck and other blunt-force injuries. The guards did not find Hinkle until at least four hours later. Once found, it was too late, he was put on life support, eventually succumbing to his injuries.

  d.  On September 30, 2021, an unknown inmate at CFCF was brutally attacked and stabbed by three inmates. No guards came to his aid. The inmate suffered serious life-threatening injuries.

  e.  In March of 2021, Armani Faison was incarcerated at CFCF. He was assigned to a cell with known, dangerous inmate Kevin Massey. Massey had sexually assaulted another inmate earlier that day. In response to the sexual assault, Massey was not placed in administrative or disciplinary segregation. That other inmate was moved out of the cell with Massey. Faison was moved into the cell with Massey mere hours after Massey sexually assaulted the other inmate. Massey repeatedly raped, beat, and choked Faison. Faison's body was found the next morning, naked, bloodied, floating in six inches of water. He was transported to Nazareth Hospital and pronounced dead that morning.

31.  As a result of the prior conduct of Wingfield and/or Watson, Defendants knew inmates Wingfield and/or Watson had a propensity to attack other inmates like Plaintiff.

32. As a result of the prior conduct of Wingfield and/or Watson, Defendants knew or had reason to know inmates Wingfield and/or Watson would attack Plaintiff.

33. As a result of the prior conduct of Wingfield and/or Watson, Defendants knew or had reason to know inmates Wingfield and/or Watson would attack Plaintiff and did nothing about it.

34. On the same date and time, Defendant City of Philadelphia did not properly train and/or supervise Defendant Nicholls and Defendant Correctional Officers John Does #1-10 how to properly discipline an inmate, and/or did not properly train and/or supervise its staff of correctional officers generally.

## COUNT I:
## FOURTEENTH AMENDMENTS
## PURSUANT TO 42 U.S.C § 1983
## PLAINTIFF V. ALL DEFENDANTS

35. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

36. As set herein, this is a civil rights action brough pursuant to 42 U.S.C. § 1983 that challenges the unconstitutional actions of the Defendants that resulted in harm to Plaintiff.

37. At all relevant times hereto, Defendants were "persons" acting under color of state law. The Fourteenth Amendment imposes on Defendants the obligation to take reasonable measures to protect pretrial detainees from violence at the hands of other inmates.

38. As explained above, Defendants failed in their obligation at every turn.

39. Defendants' conduct exposed Plaintiff to a substantial risk of harm.

40. Defendants knew of and were deliberately indifferent to those known risks.

41. As a result of Defendants deliberate indifference, Plaintiff was severely injured and required medical treatment.

42. Defendants were in direct violation of the Fourteenth Amendment, as well as their own

policies, when they recklessly, willfully and with deliberate indifference failed to segregate and/or to move known-dangerous inmates.

43. While acting under color of state law, Defendants affirmatively created the danger that led to Plaintiff's injuries by:

> a. Placing Plaintiff on a block with inmates Wingfield and Watson despite knowledge of their attack of another inmate(s);
>
> b. Failing to adequately protect Plaintiff from injuries while in their custody and control; and,
>
> c. Willfully subjecting Plaintiff to injuries.

44. The danger created by the Defendants as set forth above was foreseeable and direct, and through their failures, willful disregard, and deliberate indifference to Plaintiff's safety, Defendants acted with a degree of culpability that shocks the conscience.

45. Defendants acts and omissions caused Plaintiff to suffer extreme and severe physical and emotional distress, terror, agony, and ultimately were the direct and proximate cause of his injuries.

WHEREFORE, Plaintiff claims of Defendants, jointly and severally, a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

**COUNT II:**
**FAILURE TO PROTECT**
**EIGHTH AMENDMENT**
**PURSUANT TO 42 U.S.C § 1983**
**PLAINTIFF V. ALL DEFENDANTS**

46. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

47. Defendants Carney, Lacombe, and Vetter were responsible for overseeing prison operations including prisoner classification at PICC at the time of Plaintiff's injuries.

48. Defendants Nicholls and Does #1-10 were acting as correctional officers at the time of Plaintiff's injuries.

49. Defendants had a duty to protect Plaintiff from violence at the hands of other inmates like Wingfield and Watson.

50. Defendants knew or had reason to know inmates Wingfield and/or Watson posed a danger to other inmates like Plaintiff.

51. Defendants failed to take reasonable measures to guarantee the safety of Plaintiff.

52. Defendants permitted conditions in PICC that posed a substantial risk of serious harm to Plaintiff.

53. Defendants were deliberately indifferent to that substantial risk to Plaintiff's health and safety.

54. Defendants deliberate indifference cased Plaintiff harm.

55. Defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm.

56. As a direct and proximate cause of Defendants' actions and omissions, Plaintiff suffered and underwent great pain and continues to do so.

57. As a direct and proximate result of Defendants actions and omissions, Plaintiff suffered serious physical injuries including, but not limited to, a laceration to his eye, puncture wounds to his back, bruising, and other injuries, the full extent of which are not yet known.

58.     As a direct and proximate result of Defendants actions and omissions, Plaintiff suffered serious mental and psychological injuries, including, but not limited to, anxiety, trauma, and depression.

59.     Plaintiff also makes a claim for such injuries, damages, and consequences resulting from the incident of which he has no present knowledge.

WHEREFORE, Plaintiff claims of Defendants, jointly and severally, a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

### COUNT III:
### FAILURE TO INTERVENE
### EIGHTH AND FOURTEENTH AMENDMENTS
### PURSUANT TO 42 U.S.C § 1983
### PLAINTIFF V. ALL DEFENDANTS

60.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

61.     Defendants Carney, Lacombe, and Vetter were responsible for overseeing prison operations including prisoner classification at PICC at the time of Plaintiff's injuries.

62.     Defendants Nicholls and John Does #1-10 were acting as correctional officers at the time of Plaintiff's injuries.

63.     Defendants Nicholls and John Does #1-10 had a duty to intervene in order to protect Plaintiff from dangerous inmates like Wingfield and Watson.

64.     Defendants Nicholls and John Does #1-10 had a reasonable opportunity to intervene in order to protect Plaintiff against force by Wingfield and Watson in that they:

    a. knew of threats against other inmates made by Wingfield and Watson;

    b. were physically present at the scene of the attack and could have prevented it;

      c. could have timely prevented the attack;

      d. had the ability to request assistance on behalf of Plaintiff;

      e. had the ability to immediately stop the attack once it had begun; and

      f. could have acted to protect Plaintiff in other ways not yet known to Plaintiff.

65. Defendants Nicholls and John Does #1-10 violated that duty to intervene in that they:

      a. were actually aware of and did not intervene;

      b. were physically present at the scene of the attack and could have prevented the attack from occurring;

      c. did not stop the attack prior to Plaintiff becoming injured;

      d. did not immediately request assistance on behalf of Plaintiff;

      e. did not immediately restrain Wingfield and Watson; and

      f. did not act in other ways not yet known to Plaintiff.

66. Defendants Nicholls and John Does #1-10 actions and omissions were a direct and proximate cause of Plaintiff's injuries and damages.

67. Defendants Nicholls and John Does #1-10 acted intentionally, maliciously and wantonly, by failing to intervene when they were otherwise able.

68. As a direct and proximate cause of Defendants Nicholls and John Does #1-10 actions and omissions Plaintiff suffered and underwent great pain and continues to do so.

69. As a direct and proximate result of Defendants Nicholls and John Does #1-10 actions and omissions, Plaintiff suffered serious physical injuries including, but not limited to, a laceration to his eye, puncture wounds to his back, bruising, and other injuries, the full extent of which are not yet known.

70.     As a direct and proximate result of Defendants Nicholls and Doe's actions and omissions, Plaintiff suffered serious mental and psychological injuries, including, but not limited to, anxiety, trauma, and depression.

71.     Plaintiff also makes a claim for such injuries, damages, and consequences resulting from the incident of which he has no present knowledge.

WHEREFORE, Plaintiff claims of Defendants, jointly and severally, a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT IV - MONELL CLAIM UNDER 42 U.S.C. § 1983
## DEFENDANT CITY OF PHILADELPHIA (FAILURE TO TRAIN AND SUPERVISE)

72.     The proceeding paragraphs are incorporated herein by reference.

73.     Defendant City of Philadelphia had a duty to adequately train its employees at the Philadelphia Prison System to prevent the types of constitutional violations suffered by Plaintiff.

74.     Defendant City of Philadelphia had a duty to adequately supervise its employees to prevent the types of constitutional violations suffered by Plaintiff.

75.     Inmates Wingfield and Watson assaulted Plaintiff.

76.     Defendant City of Philadelphia was aware that correctional officers would frequently encounter situations where decisions regarding the classification of inmates would be made.

77.     Defendant City of Philadelphia was aware that correctional officers would encounter situations where intervention on behalf of an inmate being subject to constitutional violations would be required in order to either outright prevent or minimize the violations and related damages.

78.     Defendant City of Philadelphia was aware of the history of correctional officer employees mishandling these decisions and mishandling such situations.

79. Defendant City of Philadelphia was further aware of the history of correctional officer employees failing to follow security and safety protocols to ensure known, dangerous inmates are kept in segregation.

80. Defendant City of Philadelphia was further aware that such mishandling often caused violations of the Fourteenth and Eighth Amendment rights of inmates.

81. The failure to adequately train and supervise Defendants Carney, Lacombe, Vetter, Nicholls and John Does #1-10 Defendants resulted in the assault of Plaintiff.

82. The failure to adequately train and supervise Defendants Carney, Lacombe, Vetter, Nicholls and John Does #1-10 resulted in a violent assault on Plaintiff that Defendant City of Philadelphia knew or should have known was likely to occur.

83. As a direct and proximate result of these failures by Defendant City of Philadelphia, Plaintiff suffered severe physical and emotional injuries.

84. Plaintiff claims damages as a result of these severe physical and emotional injuries, which violated his rights under the United States Constitution and corresponding laws of the United States.

85. Defendant City of Philadelphia has been deliberately indifferent to the rights of prisons, which deliberate indifference violates Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth.

86. Defendant City of Philadelphia has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including the individual Defendants, regarding individuals' right to be free of violations of the Eighth and Fourteenth Amendments of

the Constitution of the United States, and the laws of the Untied States and of the Commonwealth of Pennsylvania.

87. The Defendant City of Philadelphia, by failing to take action to train or supervisor its correctional officers, and by having a practice or custom of remaining deliberately indifferent to systematic abuse, acquiesced and/or condoned the policy and the actions of the individual defendants who violated Plaintiffs rights under the United States Constitution and the laws of the United States and the Commonwealth of Pennsylvania.

88. Plaintiff believes and therefore avers the Defendant City of Philadelphia has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including the individual Defendants, regarding individuals' rights under the Fourth Amendment of the Constitution of the United States.

89. Defendant City of Philadelphia knew or should have known that its employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff, and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice and therefore acquiesced in, and were deliberately indifferent to, the aforementioned unconstitutional conduct and policy.

90. By failing to take action to stop or limit the policy and/or custom and/or practice by remaining deliberately indifferent to the systematic abuse which occurred in accordance with and as a direct and proximate result of the policy, Defendant City of Philadelphia condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

91.     The conduct of Defendant City of Philadelphia and/or the conduct of defendants' employees or agents, and/or policy maker for the Defendant City of Philadelphia, were a factual cause of and/or the cause of the harm and damages sustained by Plaintiff.

WHEREFORE, Plaintiff demands judgment for compensatory damages against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, and declaratory and injunctive relief.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

RESPECTFULLY SUBMITTED,

April 19, 2023　　　　　　　　　　　　/s/ *Lauren A. Wimmer*
DATE　　　　　　　　　　　　　　　　Lauren A. Wimmer, Esq.
　　　　　　　　　　　　　　　　　　　PA ID: 319955
　　　　　　　　　　　　　　　　　　　Wimmer Criminal Defense, PC
　　　　　　　　　　　　　　　　　　　505 South Street
　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19147
　　　　　　　　　　　　　　　　　　　LAUREN@LAWimmer.com
　　　　　　　　　　　　　　　　　　　(215) 712-1212 (phone)
　　　　　　　　　　　　　　　　　　　(215) 814-8919 (fax)


　　　　　　　　　　　　　　　　　　　__/s/Brian J. Zeiger_____
　　　　　　　　　　　　　　　　　　　Brian J. Zeiger, Esq.
　　　　　　　　　　　　　　　　　　　PA ID: 87063
　　　　　　　　　　　　　　　　　　　Levin & Zeiger, LLP
　　　　　　　　　　　　　　　　　　　Two Penn Center
　　　　　　　　　　　　　　　　　　　1500 JFK Blvd, Suite 620
　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19102
　　　　　　　　　　　　　　　　　　　zeiger@levinzeiger.com
　　　　　　　　　　　　　　　　　　　215-825-5183